UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



| | | |
|---|---|---|
| ADVANTAGE ADVERTISING, LLC., | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] CV-02-CO-02117-S | |
| | ] | |
| CITY OF ALABASTER, ALABAMA, | ] | |
| | ] | |
| Defendant(s). | ] | |

**ENTERED**

SEP 2 9 2004

### MEMORANDUM OF OPINION

This is an action for damages and injunctive relief brought pursuant to

42 U.S.C. § 1983 wherein the plaintiff claims it has been deprived of rights,

privileges or immunities afforded it under the Constitution of the United

States.   The plaintiff, ADvantage Advertising, LLC. (hereinafter,

"ADvantage") claims the City of Alabaster, Alabama, (hereinafter, "the

City" or "Alabaster") denied its five applications for permits to place signs

in the City in reliance on an allegedly unconstitutional ordinance.   The

present action includes challenges to the ordinance facially and as it was

applied to ADvantage. The cause is presently before the court for

consideration of the City's motion for summary judgment, filed October 14, 2003, (Doc. 20), and ADvantage's motion for partial summary judgment, filed November 4, 2003, (Doc. 34).[1]  The motions have been fully briefed and are ready for submission.

I.    Standard of Review.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support

---

[1]ADvantage submitted a brief and evidence in support of its motion on October 15, 2003, but failed to submit its motion.  (Doc. 25, 26).  The oversight was corrected on November 4, 2003.

of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

II.    Statement of Facts.[2]

ADvantage is a limited liability corporation that was organized under the laws of the State of Georgia in November 2000. ADvantage Responsive Statement of Facts, Doc. 35, Item 1 (hereinafter, "ADvantage Facts"). ADvantage has lease agreements with the owners of five different parcels of land within the city limits of Alabaster, authorizing ADvantage to construct and operate one sign on each parcel. *Id.*, Items 8, 9. On June 25th and 26th of 2002, ADvantage submitted applications to the City, seeking sign permits for each of the five parcels. *Id.*, Item 10. An authorized City official denied all five of the applications on July 2, 2002, and wrote on four of the applications "Disapproved Does not comply with Section 10.0 B of the Zoning Ordinance of the City of Alabaster" [sic]. Complaint, ¶ 19; Alabaster Submission of Evidence, Doc. 23, Exhibits 3B, 3C, 3D, 3E. The stated reason for disapproval of the fifth application was

---

[2]In developing the statement of facts for this opinion, the Court considered the facts proposed by the parties and the Court's own examination of the record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

failure to comply with Sections 10.0 B and 10.0 H of the Zoning Ordinance.

*Id.* at 3A.

> Alabaster's Zoning Ordinance, Article X,  Section 10.0 B provides:

> Billboards are only permitted in the B-3, B-4, M-1 and M-2 districts, on parcels which abut the Interstate Highway 65 right-of-way, and oriented so as to be viewed from the main traveling lanes of Interstate Highway 65.

ADvantage Facts, Item 12.  Alabaster's Zoning Ordinance, Article X, Section

10.0 H provides:

> All billboards shall be setback at least thirty (30) feet from any public right-of-way and property line.

*Id.* at Item 13.

III.    Discussion.

In *Metromedia Inc. v. City of San Diego,* 453 U.S. 490, 502 (1981), the

Supreme Court recognized that "[b]illboards, . . . like other media of

communication, combine communicative and non-communicative aspects,"

and, while the government may have legitimate interests in controlling the

non-communicative aspects of the medium, the First and Fourteenth

Amendments foreclose a similar interest in controlling the communicative

aspects.  *Id.*  Where a governmental regulation of the non-communicative

aspects of a medium impinges in some degree on the communicative aspects of that medium, the courts must reconcile the government's regulatory interests with the individual's right to expression. *Id.*

A.    Mootness.

Alabaster amended the sign regulation portions of its Zoning Ordinance on November 3, 2003, effective January 1, 2004. Alabaster Evidence, Doc. 40. It claims that the amendments, including additional definitions, clarifications of definitions, language setting out its purpose for sign regulation, time limits for permit application and a clarified appeals process, moot ADvantage's claims that the Ordinance is facially unconstitutional. If the suit is moot, there is no Article III case or controversy and this court lacks subject matter jurisdiction to entertain it. *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1327-28 (11th Cir. 2004).

In *Coral Springs*, the Eleventh Circuit applied the mootness doctrine to a situation which was, in many aspects, similar to the case before this court. The Circuit Court recognized the general rule that the voluntary cessation of allegedly illegal conduct does not moot a case due to the

possibility that the defendant could return to his old ways. *Id.* at 1328. Governmental entities, however, are generally presumed unlikely to resume their illegal activities and, therefore, a challenge to the constitutionality of a statute is generally mooted by repeal of that statute, at least to the extent any superseding statute removes the challenged features of the prior law. *Id.* at 1329. The Circuit Court particularly observed that a request for injunctive relief is mooted by repeal of a challenged statute. *Id.*

However, where there is reason to believe the law may be reenacted after dismissal of the suit, the case will not be found moot. *Id.* at 1330. The Court said, "[w]hether the repeal of a law will lead to a finding that the challenge to the law is moot depends most significantly on whether the court is sufficiently convinced that the repealed law will not be brought back." *Id.* at p. 1331. There is nothing in the record before this court illuminating Alabaster's intentions with respect to bringing back the old law. The Eleventh Circuit found it significant that the city in *Coral Springs* promptly amended its Sign Code after it received a letter from the plaintiff and before the plaintiff filed suit. *Id.* at 1333. Further, counsel for the city stated there was no indication the city's old sign code would be reenacted.

Although there is no showing that Alabaster had notice of the plaintiff's claims prior to this suit, Alabaster waited over a year after the commencement of this action to amend its Sign Code and then waited two more months to make the amendments effective. Furthermore, Alabaster's submission is devoid of any representation about its intentions regarding the old sign regulation. Doc. 39, p. 5.

Therefore, this case is more akin to the situation in *National Advertising*, wherein the Eleventh Circuit found the repeal of an old statute did not moot the controversy. *See Coral Springs*, 371 F.3d at 1333 ("The City's behavior stands in stark contrast to that of the defendant in *National I*, which did not change the offending law until six weeks *after* it had been sued, and moved to dismiss the day after the change"). Accordingly, the case is not moot.

B.    Standing.

ADvantage claims that it may challenge "each and every unconstitutional aspect of the Sign Ordinance" under the overbreadth doctrine. ADvantage Initial Submission, p. 2. "The federal courts are under an independent obligation to examine their own jurisdiction, and standing

'is perhaps the most important of the jurisdictional doctrines.'" *FW/PBS v. Dallas*, 493 U.S. 215, 231 (1990).  As a threshold matter, then, this court must determine whether ADvantage has standing to facially challenge the entire Sign Ordinance.[3]

"A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself."   *United States v. Frandsen,* 212 F.3d 1231, 1235 (11th Cir. 2000). To succeed with a facial challenge, the challenger typically must establish that no set of circumstances exists under which the legislation would be valid. *Horton v.*

_____

[3]The parties did not initially address the standing issue, but this court solicited additional briefing on the application of *Granite State Outdoor Advertising, Inc. v. City of Clearwater*, 351 F.3d 1112 (11th Cir. 2003)(discussed *infra*) and has considered the parties' responses.  Despite its claim that it may challenge "each and every provision" of the Alabaster sign ordinance, ADvantage did not reference the *Clearwater* decision in any submission prior to the court's solicitation of argument.  Even if the *Clearwater* decision is factually distinguishable from the case *sub judice*, as ADvantage now argues, this binding precedent is clearly relevant to legal issues raised by ADvantage's suit. Furthermore, the cases are factually similar.   In *Clearwater*, a billboard advertiser challenged numerous provisions of a local sign ordinance and the district court applied the overbreadth doctrine to conclude that many of the provisions were unconstitutional. 213 F. Supp. 2d 1312 (M.D. Fla. 2002).  The Eleventh Circuit reversed, finding that Granite State had standing under the overbreadth doctrine to challenge the single provision that caused it actual injury, but not the entire ordinance. 351 F.3d 1112.  As discussed above, the court has concluded that the *Clearwater* case is applicable to many of ADvantage's claims.  Plaintiff's omission of this case from its multiple submissions of "subsequent authority" is particularly egregious in view of E. Adam Webb's participation as counsel for the plaintiff advertising companies in this case and in the *Clearwater* case.

*City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001).  However, the overbreadth doctrine provides an exception to this rule in the limited context of the First Amendment.  *Id.* at 1331; *See Frandsen,* 212 F.3d at 1235-37 (discussing application of overbreadth doctrine).  In such cases, a facial challenge may be successful though "its application in the case under consideration may be constitutionally unobjectionable" because the "very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court."  *Horton,* 272 F.3d at 1331 (citations omitted).  This exception has generally been applied only to prior restraints on speech.  *Id.* at 1331-32.  The overbreadth doctrine does not apply to commercial speech, but when the challenged ordinance reaches commercial and non-commercial speech a commercial speaker may use the overbreadth rule to assert the rights of third parties with non-commercial speech interests. *Dimmitt v. City of Clearwater,* 985 F.2d 1565, 1571 (11th Cir. 1993).

While ADvantage seeks to assert a facial challenge to the entire Sign Ordinance, the only actual injury it claims to have suffered is the denial of its request for permits to erect five billboards based on Sign Ordinance

Sections 10.0 B and 10.0 H.   The three constitutional requirements for

standing, all of which must be satisfied, are: "(1) an injury in fact, meaning

an injury that is concrete and particularized, and actual or imminent, (2) a

causal connection between the injury and the causal conduct, and (3) a

likelihood that the injury will be redressed by a favorable decision."

*Granite State v. Clearwater*, 351 F.3d at 1116.   The overbreadth doctrine

provides an exception to the prudential rule that a party generally cannot

raise claims of third parties, but it does not provide an exception to the

constitutional standing requirements.   *Id.*   In *FW/PBS*, the Supreme Court

found petitioners did not have standing to challenge certain provisions of an

adult entertainment ordinance because no petitioner could claim to have

been actually injured by those provisions.   *FW/PBS*, 493 U.S. at 229-35

(concluding there was no jurisdiction to reach merits of challenges to civil

disability provision or provision disabling individuals residing with those

whose licenses had been denied or revoked because no party had shown

sections applied to them);[4] *Messer*, 975 F.2d at 1514 (appellant did not have

---

[4]FW/PBS was a plurality opinion.   Although Justices Brennan, Marshall and
Blackmun opined that the standing issue should not have been addressed, 493 U.S. at
242-43, and Justice Stevens opined the standing issue could not be decided without

standing to challenge variance powers of board where he did not request a

hearing); *Granite State  v. City of Clearwater*, 351 F.3d at 1116-18 (limiting

claim to single section of code which caused appellant harm).

Therefore, ADvantage has standing to challenge the constitutionality

of Sections 10.0 B and 10.0 H of the Zoning Ordinance, as applied to it and,

under the overbreadth doctrine, to the extent those sections affect non-

commercial speakers.[5]

_____

further fact-finding by the district court, *Id.* at 249-50, no member of the Court
disagreed with Justice O'Connor's reasoning on the standing issue.

[5]In particular, ADvantage lacks standing to assert its claims that the Sign
Ordinance lacks appropriate procedural safeguards, grants unbridled discretion to public
officials, and treats some commercial speech more favorably than non-commercial
speech.  ADvantage complains that the Sign Ordinance does not limit the time in which
Alabaster City officials must render a decision, but does not claim and has not shown
that it was injured by the lack of time limits.  (Initial Submission, Doc. 26, pp. 5-9).
ADvantage's applications were submitted on June 25th and 26th of 2002 and denied on
July 2, 2002.  Alabaster Evidence, Doc. 23, Exhibits 3A-3E; ADvantage Response, Doc. 35,
p. 10, Items 25, 26.  ADvantage did not appeal the denial of its application to the Board
of Zoning Adjustment.  ADvantage Response, Doc. 35, p. 11, Item 28.  Similarly,
ADvantage complains that certain sections of the Sign Ordinance grant licensing officials
"unbridled discretion" to deny permits, but does not show that any of these sections
were used to deny its permit application.  (Doc. 26, pp. 9-12).  Sections 10.0 B and
10.0 H, under which ADvantage's permits were denied, included specific objective
criteria to guide official decision-making.  Similarly, ADvantage's application for a
billboard permit did not grant it standing to assert claims that other sections of the
ordinance favored commercial speakers over non-commercial speakers, or favored the
signs of certain businesses over other businesses.  (Doc. 26, pp. 13- 16).  ADvantage did
not claim or show it was among the speakers affected by the allegedly differential
treatment of residential signs, on-site signs, directional signs and so on.  *Id.*

C.   The First Amendment Claims.

As discussed above, ADvantage's permit requests were denied pursuant to Sign Ordinance Sections 10.0 B (requiring billboards to be located on parcels abutting I-65 and visible from I-65) and 10.0 H (establishing set-back requirements).

ADvantage claims its permits were unconstitutionally denied because the Sign Ordinance does not include a purpose, rationale, or findings to support its regulation of speech. Complaint, Count Four; Initial Submission, Doc. 26, pp. 17-22, 16. However, as observed above, Section X, the "Sign Regulation," is part of a larger Alabaster "Zoning Ordinance," and Section II of the Zoning Ordinance specifically sets out a "Purpose and Method" for the ordinance. ADvantage has not offered any reason in law or fact to require a separate rationale or purpose for the Sign Ordinance.[6] Accordingly,  the following purpose, provided in Section II of the Zoning Ordinance applies to Section X of the Zoning Ordinance:

---

[6]ADvantage tacitly acknowledges the relevance of the entire Zoning Ordinance as context for the Sign Ordinance, in that much of its argument about the Sign Ordinance references Article IV, the definition section of the Zoning Ordinance.

> The fundamental purpose of this Ordinance is to promote the public health, safety, morals and general welfare; to provide for the orderly development and growth of Alabaster; to avoid congestion on the public roads and streets; to conserve life, property and natural resources and the expenditure of funds for public improvements and services to conform with the most advantageous uses of land, resources and properties, for the general good and benefit to the people of Alabaster.

Zoning Ordinance, Art. II, § 1.0. Purpose.  At least one of Alabaster's stated purposes, the avoidance of congestion on the road and streets, is directly advanced by the billboard restrictions in 10.0 B and 10.0 H.  *See Metromedia*, 453 U.S. at 507-08 (finding traffic safety was a substantial government interest which was directly advanced by a restriction on billboards).

Notwithstanding its reliance on various iterations of the *Central Hudson* test in different contexts,[7] ADvantage has not shown that Sections

---

[7]The *Metromedia* court observed "whatever its communicative function, the billboard remains a 'large, immobile, and permanent structure which like other structures is subject to . . . regulation' . . . .  Moreover, because it is designed to stand out and apart from its surroundings, the billboard creates a unique set of problems for land-use planning and development." *Id*. 453 U.S. at 502 (internal citations omitted). For this reason, and because the *Metromedia* court recognized that "[e]ach method of communicating ideas is 'a law unto itself' and that law must reflect the 'differing natures, values, abuses and dangers' of each method," 453 U.S. at 501, this court has resisted ADvantage's invitation to examine the application of the *Central Hudson* test to other forms of advertisement. *Thompson v. Western States Medical Cntr.*, 535 U.S. 357 (2002)(pharmaceutical advertisements), *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525

10.0 B and 10.0 H of the Sign Ordinance constitute an unconstitutional restriction of commercial speech.

To the extent Sections 10.0 B and 10.0 H impinge on non-commercial speech, "[t]ime, place and manner restrictions are permissible if 'they are justified without reference to the content of the regulated speech, . . . serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information.'" *Messer v. City of Douglasville,* 975 F.2d 1505, 1510, (11th Cir. 1992), *citing Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748 (1976) (internal citations omitted in original).[8]

───────────────────

(2001)(advertisements of tobacco products), *Greater New Orleans Broadcasting Ass'n., Inc. v. United States,* 527 U.S. 173 (1999)(broadcast advertisements for legal gambling), *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484 (1996)(advertisements of liquor prices), *Edenfield v. Fane,* 507 U.S. 761 (1993)(personal solicitations by certified public accountants). "We deal here with the law of billboards." *Metromedia,* 453 U.S. at 501.

[8]ADvantage's claim that the "regulations are content based in that the Sign Ordinance regulates both commercial and noncommercial speech," is incorrect. ADvantage Response, Doc. 36, p. 2. *Metromedia* and its progeny assume regulation of the non-communicative aspects of media will result in restrictions on both commercial and noncommercial speech. Where commercial and noncommercial speech are treated differently or where there are other indicia of a content basis for the restrictions, the regulation will not pass constitutional muster. *See Metromedia,* 453 U.S. at 505 ("we consider separately the effect of the ordinance on commercial and noncommercial speech"); *Messer v. City of Douglasville,* 975 F.2d 1505, (11th Cir. 1992)(concluding viewpoint neutral regulation prohibiting all off-premises signs in historic area, including noncommercial signs, was appropriate time, place and manner restriction).

Despite the objective physical specifications in 10.0 B and 10. H, ADvantage argues that billboards are regulated by content rather than physical attributes because billboards are "off-premise signs" according to Article IV of the Zoning Ordinance and "off-premise signs" are defined in Article IV according to their content. ADvantage Initial Submission, Doc. 26, pp. 3-5; ADvantage Responsive Submission, Doc. 36, pp. 3-4. An off-premise sign is defined as:

> A sign which advertises or directs attention to an object, product, place, activity, facility, service, event, attraction, person, institution, organization or business which is not located on the same lot or parcel as the sign.

Alabaster Zoning Ordinance, Art. IV (Definitions).   In *Granite State Outdoor Advertising v. City of St. Petersburg*, 348 F.3d 1278, 1279, 1282 (11th Cir. 2003), the Eleventh Circuit considered similar language defining off-premise signs and concluded the definition was content-neutral.[9] The *St. Petersburg* court said, "The government's objective in regulating speech is the controlling consideration. . . .   More specifically, if the government's

---

[9]In *St. Petersburg*, the definition of an off-premise sign was "any sign that 'identif[ies] or advertis[es] a product, business, person, activity, condition, or service not located or available on the same zone lot where the sign is installed and maintained." *Id.* at 1279.

reasons for regulating speech have nothing to do with content, then the regulation is content-neutral." *Id* at 1281.

ADvantage also argues the regulation is content-based because certain signs are exempt from the permitting requirements. Initial Submission, Doc. 25, pp.3-5, 15.  The Eleventh Circuit has twice rejected this identical argument, distinguishing exemptions from permitting requirements and exemptions from outright prohibitions such as those in *Metromedia*.  *Coral Springs*, 371 F.3d at 1346-47; *Messer v. City of Douglasville*, 975 F.2d 1505, 1513 (11th Cir. 1992).[10]

ADvantage argues the City impermissibly favors commercial over non-commercial speech because it bans all off-premise signs but billboards, which are strictly regulated.  This argument is premised on ADvantage's assumption that "noncommercial messages typically do not pertain to the premises where the message is posted, [so that] signs displaying such

---

[10]The court does not necessarily conclude that ADvantage has standing to challenge the exemptions.  The sign ordinance in *Granite State v. Clearwater* included similar exemptions which the plaintiff challenged in the district court.  213 F. Supp. 2d at Appendix 1.  The Eleventh Circuit refused to consider these arguments, finding the plaintiff had standing to challenge only the provision used to deny its permits.  351 F.3d at 1115-17.  Thus, *Granite State* indicates ADvantage lacks standing to challenge the exemptions.  Notwithstanding, the challenge also fails on the merits.

messages are prohibited or relegated to off-premise status and banned or restricted." Initial Submission, Doc. 26, pp. 12-15. In *Messer v. City of Douglasville*, the plaintiff argued that a total ban on off-premise signs in the city's historic district was unconstitutional because favoring on-premise over off-premise signs also favored commercial over noncommercial speech. The Court disagreed, concluding the ordinance was viewpoint neutral. 975 F.2d at 1508-10. The Court said, "there is simply no basis for equating on-premise signs with commercial speech, and off-premise signs with noncommercial speech." *Id.* at 1509.[11]

The *Messer* court concluded the content-neutral ordinance before it was a reasonable time, place and manner restriction because the stated

_____

[11]In *Southlake Property Assoc. Ltd. v. City of Morrow*, 112 F.3d 1114 (11th Cir. 1997), the challenged sign ordinance prohibited billboards, defined as "any sign which advertises a commodity, product, service, activity or any other person, place, or thing, which is not located, found or sold on the premises upon which such sign is located." *Morrow*, 112 F.3d at 1117. The *Morrow* court held that the "definition of billboard as an offsite advertising sign does not include noncommercial speech as such speech is always onsite" and applied the *Central Hudson* test for regulation of commercial speech. *Morrow*, 112 F.2d at 1119. The *Morrow* holding seemingly applies to Alabaster's regulation of billboards, which are defined as off-site signs and could not, therefore, restrict non-commercial speech. *See Coral Springs*, 3871 F.3d at 1344 (citing *Morrow* with approval). However, since the Alabaster billboard regulations satisfy the "viewpoint neutral" test used by the *Messer* court, they would doubtlessly satisfy the substantially similar *Central Hudson* test used by the *Morrow* court. Under either test, the regulations are constitutionally unobjectionable.

goals of traffic safety and aesthetics were substantial government interests and the ordinance was narrowly drawn and left ample open channels of communication in that the ban was limited to the city's historic district. *Id.* at 1509-10.  Similarly, Sections 10.0 B and 10.0 H are content-neutral and the stated purposes for the Zoning Ordinance, "to provide for the orderly development and growth of Alabaster; to avoid congestion on the public roads and streets; to conserve life, property and natural resources and the expenditure of funds for public improvements and services to conform with the most advantageous uses of land, resources and properties . . ." are "sufficiently substantial to provide an acceptable justification for content-neutral prohibitions" regulating the location, size and placement of billboards.  Zoning Ordinance, Doc. 23, Art. II, § 1.0;  *Messer*, 975 F.2d at 1510.  Sections 10.0 B and 10.0 H, and the other restrictions on billboards discussed herein, are narrowly tailored to serve these governmental interests and leave ample channels for communication.

Accordingly, ADvantage's First Amendment challenge to Sections 10.0 B and 10.0 H of the Alabaster Sign Ordinance fails because the

restrictions are viewpoint neutral and constitute a permissible time, place and manner restriction.

    D.    The Equal Protection Claim.

Finally, ADvantage claims certain sections of the City's Sign Ordinance favor signs posted by certain businesses and organizations to the detriment of others in violation the Equal Protection Clause of the United States Constitution.

ADvantage has not shown that it suffered an injury-in-fact from the challenged provisions. Initial Brief, Doc. 26, pp. 22-23 (citing Sign Ordinance sections 2.0 B; 5.0 B - C; 6.0 A (2)-(3), C; 6.0 F; 6.0 G; 10.0 A; 12.3 C). As with its First Amendment claims, ADvantage lacks standing to challenge provisions other than 10.0 B and H under the equal protection clause. Because sections 10.0 B and H pass muster under the *Central Hudson* test, any claim that they violate the equal protection clause by discriminating between types of signs must fail as well. *See Don's Porta Signs, Inc. v. City of Clearwater*, 829 F.2d 1051, 1054 n. 10 (11th Cir. 1987).

IV.   Conclusion.

For the reasons set out herein,[12] the City of Alabaster's motion for summary judgment is due to be granted.  No genuine issues of material fact remain for trial and Alabaster is entitled to judgment as a matter of law. ADvantage's motion for partial summary judgment is due to be denied.  A separate order in conformity with this opinion will be entered.

Done this ___ day of September 2004.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

---

[12]This case is strikingly similar to at least two other ADvantage cases pending in this district.  See CV-02-P-1998-S and CV-02-P-2017-S.  The analysis in the memorandum opinions entered in those cases is instructive on the issues discussed herein.